Pittsburgh, Cincinnati and St. Louis Railway Company *v.* Sponier.

No. 9706.

## PITTSBURGH, CINCINNATI AND ST. LOUIS RAILWAY COMPANY *v.* SPONIER.

NEGLIGENCE.—*Evidence.*—In an action against a railroad company for placing a hand-car upon a public highway, in consequence of which the plaintiff was injured while passing over the highway at nigh , evidence tending to show that the defendant's servants, while executi g the lawful orders of the defendant, negligently left the car on the highway, is admissible.

SAME.—*Personal Injury.—Measure of Damages.*—In a suit for personal injury, resulting from negligence, the jury should consider the bodily pain and sickness, the extent of permanent disability, and the anxiety and distress of mind fairly caused by the injury.

SAME.—*Excessive Damages.*—An old lady aged sixty-two, by the defendant's negligence, without intention, was injured by having the bones of an arm broken, which resulted in a protracted effort at cure, without success, so that she could never again perform her usual domestic duties. *Held,* that a verdict for $2,500 damages was not so excessive as to justify a new trial.

INSTRUCTIONS.—*Evidence.*—An instruction which recites a part of the evidence, and tells the jury that, if they believe it, then the act complained of was not the act of the defendant, ought not to be given, if there was other evidence upon the same point consistent with that recited, which tended to show that the act was that of the defendant.

SAME.—It is not error to refuse a correct instruction if its substance be given in another form.

SAME.—Verbal omissions and errors in an instruction, which impair its literal accuracy, but can not be supposed to mislead the jury—e. g., omitting to specify a certain time, which is nevertheless clearly implied—do not constitute an available objection.

SAME.—The court may properly state to the jury that there was evidence tending to prove a given fact; it may even recapitulate the evidence and say what it conduces to prove, if the jury be also told that they must determine for themselves what it does really establish.

NEW TRIAL.—*Surprise.— Witness.*—It is not ordinary prudence to rely upon the unsworn statement of an adversary's witness as to what will be his testimony; and surprise resulting from such reliance, whereby a party goes to trial without witnesses to prove the real truth, is not cause for a new trial.

From the Porter Circuit Court.

*N. O. Ross,* for appellant.

BICKNELL, C. C.—This suit was commenced in the Lake Circuit Court and was taken to the Porter Circuit Court by change of venue.

It was brought by John Sponier and Catherine, his wife, for injuries sustained by Catherine by the wrongful act of the defendant in placing a hand-car on a bridge, which was part of a highway crossing a ditch within the limits of the defendant's right of way.

The complaint alleged that the defendant, on a dark night, negligently, wrongfully, unlawfully and wilfully put the hand-car on the bridge, so that a team could not pass over the bridge, and that the plaintiffs were travelling along the highway in a two-horse wagon, without notice of the obstruction, and unable to see it because of the darkness, and that, in trying to drive over the bridge, their wagon, without any fault of theirs, struck the hand-car, and, with the plaintiffs, was thrown off the bridge, breaking an arm and dislocating a shoulder of the plaintiff Catherine, and producing internal injuries by which she was confined to her bed for six months, and permanently disabled from attending to her household duties, to the damage of the plaintiffs $3,000.

The suit was dismissed, on plaintiff's motion, as to John Sponier. The defendant answered in two paragraphs:

1. The general denial.

2. As to the permanent injuries, that they were the result, exclusively, of said Catherine's gross negligence in failing to take proper care of herself.

There was a reply in denial of said second paragraph. A jury returned a verdict for the plaintiff with $2,500 damages. The defendant's motion for a new trial was overruled, judgment was rendered on the verdict, and the defendant appealed. The error relied on is overruling the motion for a new trial. The reasons assigned for such motion were:

1. Permitting the plaintiff to ask George Foster, and in permitting him to answer, the following question: "What did you do, in the fall of 1879, with reference to clearing off

the right of way of rubbish and dry grass by fire?" His answer was, "I burnt off some ties and rubbish and dry grass; I got orders to do it every fall from the railroad company."

There had been testimony tending to show that the bridge was on a public highway which crossed the railroad; that there was a ditch on each side of the railroad within the limits of the defendant's right of way; that the right of way was 100 feet wide; that said ditches were from four to six feet deep, and were crossed by plank bridges about fourteen feet wide; that the railroad was six feet higher than the level ground on each side, and that there was grass growing on each side of the right of way, and that the defendant had made the bridges about sixteen years before, and had always kept them in repair until the last spring, when the township trustee took charge of them; that George Foster was the defendant's section boss for that part of the railroad, and had charge of the hand-car, which he kept at the place where he lived.

It was competent for the plaintiff to show that Foster's duty was to burn off the dry grass and rubbish on the right of way, to prevent fire from sparks spreading over to the grass lands on each side, and then to show that, in the performance of that duty, he or his hands had negligently left the hand-car in the highway, and partly on the bridge.

There was no error in permitting said question and answer.

The second reason for a new trial is the refusal by the court of instructions Nos. 2 and 4, asked for by defendant. No. 2 was as follows:

"2. If you find that George Foster was a section foreman on defendant's road, and had charge of the hand-car that caused the injury, and that Jacob Moss, one of the section men who worked under him, went with John Triner and his employees, after working hours, and after said Moss had quit working for defendant for that day, and placed the hand-car in the highway as complained of, while assisting John Triner to burn off the right of way to protect his hay, said Moss would not be then in the service of the defendant, nor would

defendant be liable for his act in placing or assisting to place said hand-car upon the highway."

The question here was, whether the hand-car was in charge of the section boss and his hands, or in charge of John Triner; this was a question of fact to be determined by the jury upon all the evidence; whether the grass was burned at night, after ordinary working hours, was not material, if it was done under the direction of the section boss, in fulfilment of his duty to the defendant. It would have been error to tell the jury that, if the facts stated in this instruction were proved, "said Moss would not be in the service of the defendant," because, notwithstanding such facts, the other evidence might satisfy the jury that the work was really done by the section boss, and that he directed Moss to take the hand-car and do it; the section boss had testified that he burned off that rubbish and dry grass under the order of the defendant. There was no error in refusing this instruction.

Instruction No. 4, asked for by defendant, was as follows:

"One of the important questions is, whether the defendant, by its agents or employees, placed the hand-car that caused the injury, in the highway? The plaintiff alleges it did; the defendant denies it; this puts the burden of proof to establish that fact, by a preponderance of the evidence, upon the plaintiff, and if you find that the proof is equally balanced on this question, then you should find for the defendant."

There was no error in refusing this instruction, because the court gave other instructions upon the same subject equally favorable to the defendant, as follows:

The court, in its first instruction, after stating the three essential questions of fact in the case, one of which was, "Did the defendant put the hand-car on the bridge as charged?" told the jury, that "these issues are made by the plaintiff, and the law is that she must prove each material allegation of her complaint by a preponderance of the evidence." After telling the jury that they can not find for the plaintiff without a preponderance of evidence in her favor, upon a stated ques-

tion, it would be mere surplusage to add, if there is no pre-ponderance you should find for the defendant.　*Blizzard* v. *Applegate*, 77 Ind. 516.

The third reason for a new trial is, that the court erred in giving instructions Nos. 2, 3 and 4.

The second instruction is as follows:

"*Second.* A railroad company is liable for the acts of its employees or servants, done in the prosecution of the company's business and within the scope of the authority given them.　And so one of the important questions you are called on to decide is, whether the defendant, by its agents or employees, placed the hand-car that caused the injury on the highway? The true test is not the form of the employment, whether by the day or by the month, but whether the men, who left the car on the highway, were under the control and direction of the defendant, so that they were its servants, and not the servants of another."

The objection made to this instruction is that the words, " were under the control and direction of the defendant," were misleading, because not confined to the time of the act done, nor to an act within the scope of the employment. This objection can not be sustained; the instruction clearly refers to no other time than the time of the act done, and to no other business than the business of the company, within the scope of the employment of the servants.

The third instruction given by the court is:　.

"*Third.* Evidence has been introduced tending to prove that one Foster had charge of a section of the defendant's road, extending over the place of the injury, and that he was charged with the duty of burning off the dry grass and rubbish along the right of way, at such times and under such circumstances as he thought best and proper for doing such work; and that, at the time of the injury, one or more men under his charge as section men, together with others not under his control, took the car from Schererville to the place of the alleged injury, and there put it off in the highway

while they were engaged in burning off the defendant's right of way, by reason of which the injury occurred. On this I instruct you, that if you find from the evidence that the defendant, by its section boss or those under his charge, were at the time engaged in the business of burning off dry grass on its right of way, and that this work was required by the defendant from such section boss under his general employment, and at the time of the injury he, or those under his direction, were engaged in performing such work, then the presumption arises that he was acting under the instructions of the defendant, and the burden of proof would be on the defendant to show that they were not so acting."

The objection to this charge is that the court had no right to say what the evidence tended to prove. The language of the court is, "there was evidence tending to prove" and "if you find from the evidence." The court had a right to do more than that; it might have recapitulated the evidence and have stated what it might conduce to prove, leaving its weight to be determined by the jury. *Ball* v. *Cox*, 7 Ind. 453, 458. The court has no right to say what the testimony proves, nor to assume that anything is proved, but may say that "there was testimony tending to prove," when the jury are distinctly told, as they were in this case, that they must determine for themselves what actually was proved. There was really no conflict as to any of the matters which this instruction stated the evidence tended to prove; so that the instruction, even if erroneous, could have done no harm.

It is also objected that the latter part of this instruction told the jury that the burden of proof in the case was changed from the plaintiff to the defendant; but that is not the meaning of the language; the statement is that, if the jury should find from the evidence certain specified facts, they might infer that the work was done under the instructions of the defendant, unless such presumption was overcome by the testimony on behalf of the defendant. The substance of it is, not that the burden of proof in the cause is changed from the plaintiff

to the defendant, but that, where the plaintiff's evidence makes out a *prima facie* case, that is sufficient, unless it is destroyed by the defendant's evidence. *Meikel* v. *State Savings Institution*, 36 Ind. 355, 359 ; *Hayes* v. *Fitch*, 47 Ind. 21 ; *Fay* v. *Burditt*, 81 Ind. 433, 443.    There was nothing in this instruction apt to mislead the jury, or warranting the reversal of the cause. *Browning* v. *Hight*, 78 Ind. 257 ; *Backus* v. *Gallentine*, 76 Ind. 367.

The fourth instruction given by the court was :

"*Fourth.* If you find for the plaintiff you will be required to determine the amount of her damages.    On this subject I instruct you that, in estimating the damages, you will consider her bodily pain and suffering occasioned by the injury, or any sickness resulting from the injury ; and, in case you find that the plaintiff has not yet recovered from her alleged injuries, or that by such injury she has to any extent been permanently disabled, then you should take such facts also into consideration in estimating her damages, to which you may add such an amount as you, in the exercise of a sound discretion, may think will be a just compensation for her anxiety and distress of mind, as are fairly and reasonably the plain consequences of the injury complained of."

There was no error in this instruction.    *Wright* v. *Compton*, 53 Ind. 337 ; *City of Indianapolis* v. *Scott*, 72 Ind. 196.  The instructions taken together very fully and fairly stated to the jury the law applicable to the evidence.    *Colee* v. *State*, 75 Ind. 511.

The fourth cause for a new trial was surprise on the trial, which ordinary prudence could not guard against.

It appears that some agent of the defendant had been in communication with one of the plaintiff's witnesses, and had procured from him a written statement of what his testimony would be ; the statement was :

"John Triner sent me to George Foster, section foreman, to get the hand-car and go along with them, or, if he could not go, he should let us have it."

The witness, when sworn, testified :   "John Triner sent

me down to find out whether Foster was going to burn off the right of way; Moss went by Foster's orders; Foster told Moss to go down to burn off the right of way; I did not ask for the car for Triner." Being shown the statement, which the defendant's agent had procured him to sign, he said : " I signed this paper; I heard it read before I signed it; it was not read to me as 'it reads now; the paper was read to me ' whether he was going to burn off the right of way.' "

In support of this cause for a new trial, it was shown by affidavit that the facts contained in the written statement could be proved by the testimony of Jacob Moss, who was absent in Iowa or Minnesota; and that the defendant's attorney, relying on said written statement, went into trial without asking for a continuance on account of the absence of Moss, and that the defendant could prove by Moss that he was not sent by Foster, but went with Triner and his men to help them.

It has been held, that, as a general rule, neither party is entitled to a new trial because he was surprised by the testimony of the adverse party; *Cummins* v. *Walden*, 4 Blackf. 307 ; *Travis* v. *Barkhurst*, 4 Ind. 171 ; nor because he was surprised by the testimony of his own witness. *Graeter* v. *Fowler*, 7 Blackf. 554 ; *Ruger* v. *Bungan*, 10 Ind. 451 ; *Guard* v. *Risk*, 11 Ind. 156 ; *Brownlee* v. *Kenneipp*, 41 Ind. 216.

In *Todd* v. *State*, 25 Ind. 212, however, a new trial was granted, where the defendant was surprised because his own witness stated on the trial facts contrary to what he had previously stated to defendant's counsel.

And it has been held, that where a party to a suit, in order to influence the action of his adversary, tells him that certain facts will not be controverted on the trial, and the latter relies on such statement, and omits to produce witnesses to prove such facts, he may be entitled to a new trial on the ground of surprise which ordinary prudence could not guard against. *Haynes* v. *State, ex rel.*, 45 Ind. 424. But it is not ordinary prudence to rely on the unsworn statement of your adversary's witness, as to what he will testify at the trial.

Besides, in this case it does not appear that if the witness, on the trial, had sworn to the alleged previous statement, the result of the trial would have been thereby changed. *Cox* v. *Hutchings*, 21 Ind. 219. And the statement was not proved as alleged; the witness denied that he had made such a statement. There was no cause for a new trial on the ground of surprise.

The sixth and seventh causes for a new trial are, that the verdict was not sustained by sufficient evidence, and is contrary to law. The appellant, in his brief, confines his argument to the question of the sufficiency of the evidence. There was evidence tending to sustain the verdict; therefore, it can not be disturbed here. *Becker* v. *Denmure*, 78 Ind. 147.

The only remaining cause for a new trial is excessive damages.

The evidence shows a case of negligence not combined with intentional wrong. The jury gave $2,500 damages, of which $500 were allowed for physical and mental injury, and $2,000 for permanent disability. The plaintiff at the time of the injury was sixty-two years old; the only permanent disability proved was a disability to do ordinary household work. The plaintiff testified, " I did my own housework before the accident; I can not do it now, except to hold a little child in my lap." Dr. Jones testified: " Owing to old age and previous sickness, the broken bones of the arm did not readily unite, and it was necessary to keep the bandages on tight for a long time, and the arm became very much withered, as it now appears; it will never become well again; she will never be able to do housework with it."

In general, courts will not interfere with the verdict of a jury, on the ground of excessive damages, unless the damages are so great as to appear at first blush to be outrageous; or such as indicate that they were the result of partiality or prejudice, and not of deliberate judgment. *Farman* v. *Lauman*, 73 Ind. 568. The jury has a very broad discretion on the subject of damages. *City of Delphi* v. *Lowery*, 74 Ind. 520 (39 Am. R. 98). It is the judgment of the jury, and not the

judgment of the court, which is to assess the damages in actions for personal torts and injuries. *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261 (38 Am. R. 134). We can not disturb the judgment on the ground of excessive damages. *Baltimore, etc., R. W. Co.* v. *Pixley,* 61 Ind. 22. The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and it is hereby in all things affirmed, at the costs of the appellant.