The Louisville, New Albany and Chicago Railway Co. *v.* Hendricks.

No. 14,916.

# THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY *v.* HENDRICKS.

RAILROAD.—*Fencing Track.—Duty as to.— Violation of Duty.— Injury to Passenger.*—A railroad company must take measures to so fence its track as to prevent animals from running upon it. If the duty to fence is negligently violated, and the violation of duty is the proximate cause of injury to a passenger, his right of action is clear and complete.

SAME.—*Accident to Passenger.—Presumption of Negligence.—Burden of Removing.*—The burden of proof is upon a railroad company to remove the presumption of negligence which arises from the happening of an accident which causes injury to a passenger.

EVIDENCE.—*Conflicting.— Verdict not Disturbed.*—Where there is a conflict of evidence upon a disputed question of fact, the decision of the trial court will not be disturbed.

WITNESS.—*Non-Expert.—Speed of Train.*—A non expert witness may give an opinion as to the speed at which a train was moving.

NEW TRIAL.—*Surprise.*—Where a party proceeds with a trial, fully cross-examines the witness whose testimony creates the alleged surprise, and takes the chance of a verdict, he can not have a new trial on the ground that he was surprised by the testimony, without showing a very strong and clear case.

SAME.—*Misconduct of Jury.— When Communication to Court is not.*—After a jury had been deliberating for some hours they sent by the bailiff to the court a communication as follows : " The jury stand eleven to one. We have stood that way all night. No hope of a verdict." The communication was shown to the plaintiff's attorneys. The misconduct of the jury, if misconduct at all, was not such as to entitle the defendant to a new trial. The misconduct of a jury must be gross, and clearly result in an injury to the complaining party, to justify the awarding of a new trial.

From the Jackson Circuit Court.

*C. C. Matson* and *E. C. Field,* for appellant.

*S. B. Voyles, W. K. Marshall, J. A. Zaring* and *M. B. Hottel,* for appellee.

ELLIOTT, J.—The appellee was a passenger on one of the trains of the appellant; the train in which he took passage was thrown from the track and he was severely injured. The appellant's employees ran the train against a cow which

had entered upon the track, and the collision caused the train to leave the rails.

A witness who had lived near the railroad and had often seen trains in motion was permitted to give an opinion as to the rate of speed at which the train was running at the time the cow was struck. In this ruling there was no error. A non-expert witness may give an opinion as to the speed at which a train was moving. Possibly the testimony of a non-expert may be of less value than that of an expert, but that proves nothing to the purpose, for here the question is whether the evidence should be heard, not what weight should be assigned it. The authorities give full support to our conclusion that the testimony was competent. *Louisville, etc., R. W. Co.* v. *Jones*, 108 Ind. 551; *Evansville, etc., R. R. Co.* v. *Crist*, 116 Ind. 446 (457), and authorities cited; Lawson Expert and Opinion Evidence, 462; Rogers Expert Testimony (2d ed.), 244.

The duty of a railroad company engaged in carrying passengers has so often been defined that it is unnecessary to do more than state in bare outline what that duty is, and this we do by saying that it is bound to exercise the highest degree of practicable care to keep its track, machinery and appliances in a safe condition for use. This duty requires it to take measures to so fence its track as to prevent animals from wandering upon it. Many decisions affirm that the statutes imposing upon railway corporations the duty of fencing their tracks are valid because they are enacted under the police power, and are intended to protect persons travelling upon the railroads of the country. If the duty to fence is negligently violated, and the violation of duty is the proximate cause of injury to a passenger, his right of action is clear and complete. A violation of a statutory duty has often been adjudged to give a traveller upon a highway a right of action against a railroad company, and, beyond controversy, such a breach of duty must give a right of action where the relation of carrier and passenger exists. It is the

relation of carrier and passenger which creates the high duty that rests upon the appellant, and brings the case within the strong and salutary rule that the law has established for the protection of travellers who intrust themselves to the care of common carriers. The rule to which we refer is the one that imposes upon the carrier the burden of removing the presumption of negligence which arises from the happening of an accident which causes injury to a passenger. This case illustrates the wisdom and justice of the rule. A passenger can not, in reason, be expected or required to ascertain the condition of the fences along the line of the carrier's track, for the matter is one peculiarly within the knowledge of the carrier. It must be true that it is a matter within the peculia knowledge of the carrier, or else it must be true that the carrier remained ignorant and inactive where it was its imperative duty to be active and vigilant. It is, at all events, no more than reasonable and just to require of the company, in such a case as this, an explanation of the cause of the accident, and such an explanation, too, as will show that it was not in fault. In this instance it was its duty to show, at leastr that the fences were reasonably secure, and that it did use care and diligence to make such fences as would prevent domestic animals from straying on the track. The rule to which we refer was thus expressed in *Louisville, etc., R. W. Co.* v. *Jones, supra:* " When the plaintiff made it to appear that she was a passenger upon appellant's train, and while being carried as such, the car in which she was seated left the track and she suffered injuries thereby, she had shown a state of things upon which a presumption of negligence arose against the railroad company, which stood with the force and efficiency of actual proof of the fact, and was available for her benefit until negatived and overthrown, and such presumption can only be overthrown by proof that the casualty ' resulted from inevitable or unavoidable accident, against which no human skill, prudence or foresight, as usually and

practically applied to careful railroad management, could provide.' "

In many cases the doctrine declared in the opinion from which we have quoted has been asserted. *Memphis, etc., Co.* v. *McCool,* 83 Ind. 392 ; *Terre Haute, etc., R. R. Co.* v. *Buck,* 96 Ind. 346, and authorities cited ; *Cleveland, etc., R. R. Co.* v. *Newell,* 104 Ind. 264 ; *Bedford, etc., R. R. Co.* v. *Rainbolt,* 99 Ind. 551 ; *Anderson* v. *Scholey,* 114 Ind. 553 ; *Louisville, etc., R. W. Co.* v. *Pedigo,* 108 Ind. 481 ; *Louisville, etc., R. W. Co.* v. *Snyder,* 117 Ind. 435.

In view of the rule that it was incumbent upon the appellant to show that it was not negligent, or that it did not omit to do what the law requires it to do to protect its track, there can be no doubt that the verdict is fully and strongly supported by the evidence.

The appellant claimed a new trial upon the ground that it was surprised by the testimony of a witness named De Ford. We do not deem it necessary to do more than refer to some of the decisions upon the subject of surprise, and to say that where a party proceeds with the trial, fully cross-examines the witness whose testimony creates the alleged surprise, and takes the chance of a verdict, he can not have a new trial without showing a very strong and clear case, and that no such case is here shown. *Lockwood* v. *Rose,* 125 Ind. 588 ; *Scheible* v. *Slagle,* 89 Ind. 323 ; *Pittsburgh, etc., R. W. Co.* v. *Sponier,* 85 Ind. 165 ; *Sullivan* v. *O'Conner,* 77 Ind. 149 ; *Chamberlain* v. *Reid,* 49 Ind. 332 ; *Brownlee* v. *Kenneipp,* 41 Ind. 216 ; *Cummins* v. *Walden,* 4 Blackf. 307 ; *Travis* v. *Barkhurst,* 4 Ind. 171 ; *Ruger* v. *Bungan,* 10 Ind. 451.

The cases to which we have referred decide all the questions arising upon the cause assigned upon the testimony of De Ford, as well as those assigned upon the testimony of Rudder, and we do not feel that we should be justified in

discussing questions that have been so often and so fully considered.

As to the question of fact made by the affidavits and counter-affidavits, it is sufficient to say that where there is a conflict of evidence upon a disputed question of fact the decision of the trial court will not be disturbed. *Schnurr* v. *Stults*, 119 Ind. 429 ; *Epps* v. *State*, 102 Ind. 539 ; *Long* v. *State*, 95 Ind. 481 ; *De Priest* v. *State*, 68 Ind. 569 ; *Holloway* v. *State*, 53 Ind. 554; *Carter* v. *Ford Plate Glass Co.*, 85 Ind. 180.

After the jury had been deliberating for some hours, they sent, by their bailiff, to the court the following written communication : " The jury stand eleven to one. We have stood that way all night. No hope of a verdict." This communication was shown to the plaintiff's attorneys. The alleged misconduct of the jury was, if misconduct at all, not such as to entitle the appellant to a new trial. In the case of *Long* v. *State*, *supra*, it was said : " Another general rule is that the misconduct of the jury must be gross, and clearly appear to have injured the complaining party, to justify the granting of a new trial." Many cases are cited in support of this conclusion, and to those cited many may easily be added. That the alleged misconduct did the appellant no harm is too clear to require discussion.

Judgment affirmed.

Filed June 11, 1891.