No. 14,973.

# THE PENNSYLVANIA COMPANY v. McCORMACK, ADMINISTRATOR.

RAILROAD.—*Complaint.*— *Contributory Negligence.* — *Demurrer.* — *Motion to Make More Specific.*—In an action to recover damages for personal injuries resulting in death, a general averment in the complaint that the party was without fault is sufficient, unless the facts specially pleaded clearly show that he was guilty of contributory negligence. Such an averment is sufficient to withstand a demurrer or a motion to make more specific.

SAME.—*Construction of Track.*—*Duty as to.*—*Co-Employee.*—If a railroad company so negligently constructs its tracks and side tracks, that cars occupying the main line of its track can not pass cars occupying the adjacent side track without endangering the lives of the employees charged with the duty of moving such cars, its negligence is actionable. If one of its employees is, by reason thereof, killed or injured while in the discharge of his duty, and is himself without fault, and using due care, such company is liable to respond in damages. It was the duty of the company to contemplate that sooner or later cars might have to pass each other at each and every point on the two tracks. It is no defence that those whose acts brought such cars into such dangerous proximity were co-employees with the one injured.

SAME.—*Negligence.*—*Proof of Custom.*—It was proper for the plaintiff to show that it was customary to cut moving trains at the station when the decedent was killed. As bearing on the question of negligence and

The Pennsylvania Company *v.* McCormack, Administrator.

tending in some degree to show whether or not the decedent was negligent, it was competent to prove that he was or was not doing his work in the usual and customary way.

SAME.—*Instructions to Jury.*—*Prefatory Statement.*—*Contributory Negligence.*—An instruction to the jury which fairly and tersely states all of the material facts necessary to be established by the plaintiff to entitle him to recover is not objectionable on the ground that the jury might fail to make the necessary connection 'between the prefatory statement, "If you shall find from the evidence," and the propositions that follow. The defendant can not complain of a clause in said instruction which informed the jury that to entitle the plaintiff to recover the intestate must have been " without any fault ór negligence on his part."

INSTRUCTIONS TO JURY—*When Court Should not Direct Verdict.*—Where there is evidence tending to support the plaintiff on all material questions, it is proper for the court to refuse to instruct the jury to return a verdict in favor of the defendant.

SAME.—*Correctness of.*—*See Opinion.*—For correctness of instructions on some of the more material points involved in the case, see latter part of opinion.

VERDICT.—*When will not be Disturbed.*—Where there is evidence tending to sustain the verdict on all material points, it will not be disturbed.

From the Bartholomew Circuit Court.

*S. Stansifer,* for appellant.

*F. T. Hord, M. D. Ewing, G. W. Cooper* and *C. B. Cooper,* for appellee.

McBRIDE, J.—William Riley was a brakeman, employed by the Pennsylvania Company. He was killed at Middle Creek Station, Jefferson county, and the appellee, as administrator of his estate, brought this suit to recover damages for his death.

The material averments of the complaint are as follows, omitting those merely prefatory or technical :

"At said station there is a switch used by defendant for switching trains and for storing and depositing freight cars, when necessary for the company, in the course of its business, to leave cars at such station. He avers that at the date hereinafter mentioned there was a box freight car standing on said switch, previously left by the officers and agents of defendant for the purposes of defendant.

Plaintiff avers that on or about the 28th day of July, 1888, William Riley was a servant in the employment of defendant as brakeman on a freight train run and operated by defendant over said line from Madison via Middle Creek Station to Columbus, Indiana. In making said trip, it became necessary to leave a car, which was a part of said freight train, at said Middle Fork Station, and to deposit said car on said switch.

He avers that a ladder is constructed on the side of said freight cars, to be used by brakemen in ascending and descending from the cars, and in coupling and uncoupling cars, and to ride on the same to open and close switches, and to give signals to his fellow-servants in the management of said train. And plaintiff avers that the said Riley, while acting as brakeman as aforesaid, and in the line and performance of his duty, while standing and riding on said ladder and giving directions, by motioning and signalling with his hand to the brakeman at the rear end of the train, to hold it until the switching could be performed at Middle Creek Station, and to enable him to open and close the switches when required, and while so standing, and in the performance of his duty, on the car on the main track of said defendant, which was in motion, the person of said Riley, without any fault or negligence on his part, came in collision with the end of said freight car standing on said switch at said Middle Creek Station, and he was then and there and thereby knocked from said ladder and car on the main track, on which he was standing, to the ground, and then and there and thereby killed.

Plaintiff avers that the death of said Riley was caused by the carelessness and negligence of defendant in maintaining its switch at said station too near the main track of said defendant, whereby sufficient space and distance could not be maintained between cars running on the main track and those standing on the switch to enable the servants of defendant to perform their duty with reasonable safety, and

the switch of defendant was carelessly and negligently allowed to get and remain out of repair, and the deceased was thereby injured.

He avers that at the point where said Riley was killed the siding of said switch was but six feet and eight inches from the main track; the switch was constructed and maintained with the ties on the surface of the ground, with no ballast of sand, gravel or other material; the switch at said point was on a straight line, and not a curve, and the track of the switch should have been made level, or the siding next to the main track should have been raised so as to cause the cars to lean therefrom, but he avers that on account of the negligence of defendant the rail of the switch next to the main track was suffered and permitted by defendant to be and remain three inches lower than the opposite rail of the switch, thereby causing the said freight car standing on said switch to lean towards the main track. The freight cars on the main track and the car on the switch protruded some distance over the line of their several tracks, and reasonably sufficient space did not exist and could not be maintained between the cars passing on the main track and freight cars standing on said switch for the safe performance of duty by deceased at the point where he was killed, the space between said points being, to wit, about two feet.

He avers that deceased was never informed of the danger of said place or of the condition of said switch, and his back was to the place of danger at the time he was injured, giving signals to his co-employees, and in position to open the switch at said point as required in the performance of his duty, and he had no knowledge of the dangerous and improper condition of said tracks and switches.

He avers that the deceased was an inhabitant of Bartholomew county, and was twenty-seven years of age, and he left a wife, Fanny Riley, and a child one year of age, Charles Maurice Riley, who were dependent on deceased for support"

Counsel for the appellant filed a motion to require the appellee to make his complaint more specific, indicating sixteen particulars in which it was, according to his views, lacking in certainty and in sufficiency of averment.

The motion is long, and, the complaint being set out above, it is unnecessary to extend the limits of this opinion by copying the motion.

A demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a good cause of action, was also overruled.

We will only say of the motion and of the demurrer that by the motion and the argument in support of it, the appellant insists that additional and specific averments should be added, showing that the deceased was free from contributory negligence, showing *why* he was, when killed, acting in the line of his duty; that he show by specific averments *all* of the facts connected with the transaction, with reasons showing why each act alleged to have been done by the decedent was within the line of his duty, and not negligent, and why each act of omission or commission charged against the appellant was negligent.

All of the precedents in this State sustain as sufficient the general averment that the party was without fault, unless the facts specially pleaded clearly show that he was guilty of contributory negligence.   Among the cases are *Ohio, etc., R. W. Co.* v. *Walker*, 113 Ind. 196, and many others there cited.

The code prescribes that the complaint shall contain "A statement of the facts constituting the cause of action, in plain and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."   Section 338, R. S. 1881, clause 2.

Good pleading does not require, nor will it justify adding to the statement of the material facts a statement of reasons or arguments to vindicate the pleader's opinion that the facts stated are sufficient to authorize a recovery.   The facts stated

also should be the material and ultimate facts, and not mere evidentiary facts.

The complaint might with more justice be criticised as containing unnecessary or redundant averments. It is averred, in substance, that the death of the decedent was caused by appellant's negligence in constructing and maintaining its switch too near its main track, not allowing sufficient space between for cars to pass each other, so as to enable its employees to perform their duties with reasonable safety; that the space between them was only six feet eight inches; that the rail on the inner side of the side-track, next to the main track, was three inches lower than its outer rail, the effect of which was to cause the cars thereon to lean toward the main track, and that this, with the distance which the cars on each track "protruded" beyond the lines of the tracks, did not allow sufficient space for the safe performance of duty by the deceased.

Coupled with the averments showing these facts are others, apparently irrelevant, and, so far as we can see, having no necessary connection with them. They might have been stricken out on motion, but the court did not err in refusing to require the appellee to make them more specific. The material averments are sufficiently specific and certain.

Counsel for the appellant argues that to constitute actionable negligence the injury must be the "usual and, therefore, to be expected result of the negligence complained of;" that the appellant was not required to anticipate the contingency of a car being placed on the side-track, and the work being done as it was done, and that such a result as the killing of the appellee in that way was something they could not be required to guard against and for which they should not be held responsible. It is conceded that if a permanent obstruction had been placed thus near the track the company would have been liable.

It is also urged that the proximate cause of the appellee's death was the placing of the car on the side-track at that

point, and that this being the act of a co-employee the company is not liable.

Neither of these objections to the complaint is tenable.

While the *immediate* cause of the decedent's death was the car, the real cause was the manner in which the side-track was constructed.

We must know that railroad tracks, both the main and side-tracks, are constructed to be used in the transport of cars from point to point, and that at times cars must necessarily be allowed to stand on such tracks, and while thus standing may properly be passed by other cars on adjacent tracks.

We must also take notice of the fact that certain of the employees, serving railroad companies, are charged with the duties incident to the moving of such cars.

The obligation of the master to the servant forbids that he should, by negligence, subject the servant to risks greater than those which fairly and properly belong to his employment.

If a railroad company so negligently constructs its tracks, and side-tracks, that cars occupying the main line of its track can not pass cars occupying the adjacent side-track without endangering the lives of the employees charged with the duty of moving such cars, its negligence is actionable. If one of its employees is, by reason thereof, killed or injured while in the discharge of his duty, and is himself without fault, and exercising due care, such company is liable to respond in damages. It is no defence that those whose acts brought such cars into such dangerous proximity were co-employees with the one injured. Properly constructed, the tracks would allow the cars to pass without danger, and the master is responsible for the manner of their construction. It will not do to say that the company was not required to contemplate such a contingency when it constructed the tracks. They were constructed to be used, and to be used in that manner, and it was its duty to contemplate the possibility

The Pennsylvania Company v. McCormack, Administrator.

that sooner or later cars might have to pass each other at each and every point on the two tracks.

Other objections are also urged to the complaint, but we think none of them are well taken. In our opinion the court did not err in its rulings either on the motion or on the demurrer.

On the trial of the case, over the objection of the appellant, the appellee was permitted to prove that it was customary to cut moving trains at the station where the decedent was killed. It is argued that this was error. We might well decline to consider the question, on the ground that the objection, as shown by the record, was insufficient to present the question argued. We think, however, that the court did not err in this ruling. True, a custom would not justify a negligent act, but, as bearing on the question of negligence, and tending in some degree to show whether or not the decedent was negligent, it was competent to prove that he was or was not doing his work in the usual and customary way, which of course involves the inquiry, what was usual and customary?

The action of the court in giving, refusing and modifying a large number of instructions is challenged by the motion for a new trial, but most of the questions thus suggested are waived by a failure to argue them.

The appellant, by its first special instruction, asked the court to direct a verdict in its favor.

There being evidence tending to support the appellee on all material questions, the court rightly refused this instruction. If there is any conflicting evidence, however slight, upon the point in issue, it must be left to the jury. *Adams* v. *Kennedy*, 90 Ind. 318; *Boling* v. *Howell*, 93 Ind. 329; *Lawrenceburgh, etc., R. R. Co.* v. *Montgomery*, 7 Ind. 474; *Haynes* v. *Thomas*, 7 Ind. 38; *Crookshank* v. *Kellogg*, 8 Blackf. 256; *Babcock* v. *Doe*, 8 Ind. 110; *Messick* v. *Midland R. W. Co.*, 128 Ind. 81.

The fifth instruction given by the court consists of a recital of the material facts asserted by the appellee, and which he was required to establish by evidence to justify a recovery, coupled with prefatory and concluding statements instructing the jury that if they should find said facts from the evidence the appellant was liable for the killing of the decedent.

The instruction is long, and we think it unnecessary to lengthen this opinion by bringing it into the record. Several objections are urged to it. It is insisted that it is misleading, and is " fatally defective for lack of essential elements for a recovery."

It is urged that it is misleading because it would be difficult for the common mind to bear in mind and apply to each proposition the prefatory statement, " If you shall find from the evidence," and that there was therefore danger that the jury, failing to make the necessary connection, might regard some of the expressions used as expressions of the opinion of the court.    We have read and considered the instruction carefully, and are of opinion that this objection is not well taken.

The jury were informed that if they found certain facts the plaintiff was entitled to recover.    It certainly imposed no very severe task upon the average intellect to apply to each consecutive fact stated, and following immediately after it, the prefatory statement.    Such an instruction, if it embraces and fairly and tersely states all of the material facts necessary to be established by the plaintiff is not improper. The appellant complains that the portion of this instruction relating to contributory negligence is " vague and indefinite," and should have been much more full, indicating several particulars in which they contend it is lacking in this respect. The jury were informed by the court that the intestate must have been " without any fault or negligence on his part." This was more favorable to the appellant than it could ask, as it would preclude a recovery if the decedent had been

The Pennsylvania Company v. McCormack, Administrator.

guilty of any negligence whatever, whether it contributed to his death or not. Elsewhere, however, full and correct instructions were given on the subject of contributory negligence, but as a portion of an instruction like that in question, placing before the jury in a connected and consecutive form the material facts which the appellee must establish to justify a recovery, this portion of the instruction was probably sufficient. At all events the appellant could not complain of it. We do not think the court erred in giving this instruction.

The only remaining instructions discussed are the sixth, seventh, eighth, and eighteenth, and are as follows:

" 6.   When Riley sought employment at the hands of defendant, he was held to an implied representation that he was competent to perform the duties of the position he sought, and competent to apprehend and avoid all danger that might be discovered by the exercise of ordinary care and prudence, and for the purposes of this case Riley is to be treated as a brakeman and switchman of ordinary experience and skill.

" 7.   A railroad company is required to use ordinary care in constructing and maintaining its roadway, switches, and appliances in such a manner and condition that its servant can do and perform all the labor and duties required of him with reasonable safety, and a servant has a right to presume that the company has, in these respects, done its duty, and a servant does not assume risks flowing from his employer's negligence in these duties, nor is there imposed upon him any duty of watchfulness and care to discover defects in the roadway and switches when he has no notice of danger, and when not so glaring and apparent as to be open to the observation of ordinarily prudent men, and when not specially directed thereto by his employer, and he will not be presumed to know of danger therein when of such a character that they might well escape the observation of a prudent person.

" 8.   A railroad company is required to use ordinary care in constructing and maintaining its roadway, switches, and

appliances, and appendages in such a manner and condition that its employee and servant can do and perform all the labors and duties required of him with reasonable safety, but the company is not required to furnish the best or safest appliances, or the latest improvements, and the servant has a right to assume that all reasonable attention will be given by his employer to his safety, and that he shall not be carelessly and needlessly exposed to risks which might be avoided by the exercise of ordinary care and precaution on the part of his employer, and the deceased, William Riley, if employed by defendant as brakeman, had the right to assume that the defendant had constructed and maintained its roadway, switches, appliances and appendages in such a manner and condition that as brakeman on its train he could perform his duties with reasonable safety, and if there was any such danger as was not open and apparent, that he should have been warned thereof.

" 18. If the alleged dangerous and improper condition of the tracks and situation with the car on the side track was plain to be seen by Riley, or if he ought, as an ordinarily prudent person, to have seen or known of it, then there can be no recovery, and if he before had reasonable opportunity to see or know of the situation as touching the alleged condition of the tracks and car on the side track, then he is in law held to such knowledge; or if on or before the occasion of the killing he had knowledge or reasonable means of knowledge, as a man of ordinary prudence, of the condition of the track and car on the side track, and incurred the danger with such knowledge or means of knowledge, then there can be no recovery."

We think these intructions, taken in connection with the other instructions given, and viewed also in the light of the evidence, are correct statements of the law. Indeed, taking all of the instructions together, we think they fully and fairly present the law, and are quite as favorable to the appellant as could be asked. We are also asked to reverse the

judgment on the ground that the verdict was not sustained by the evidence, especially that the evidence does not show that the decedent was free from contributory negligence. As the evidence is conflicting, and there is evidence tending to sustain the verdict on all material points, we will not disturb it.   We find no error in the record.

Filed Feb. 5, 1892; petition for a rehearing overruled April 9, 1892.